# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3076 | **DATE** | 8/20/2002 |
| **CASE TITLE** | MICHAEL J. BRDECKA vs. GLEANER LIFE INSURANCE SOCIETY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 10/4/02 at 9:00 a.m. Enter Memorandum Opinion And Order. Defendant's motion to dismiss plaintiffs' first amended complaint is granted with respect to Counts I and II and denied with respect to all other counts. Answer or other responsive pleading to be filed by 9/17/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 2 3 2002 date docketed | |
| ✓ | Docketing to mail notices. | | 9 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. BRDECKA and DAVID L. BLAYDES, | ) ) ) 02 C 3076 ) |
| Plaintiffs, | ) ) Hon. John W. Darrah |
| v. | ) ) |
| GLEANER LIFE INSURANCE SOCIETY, | ) ) ) |
| Defendant. | ) |

**DOCKETED AUG 2 3 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Michael J. Brdecka and David L. Blaydes ("Plaintiffs"), originally filed this action in the Circuit Court of Cook County, Illinois, against Defendant, Gleaner Life Insurance Society ("Defendant"). Plaintiffs filed a First Amended Complaint on February 20, 2002, alleging intentional misrepresentation (Counts I and II), interference with prospective economic advantage (Counts V and VI), and requesting an accounting (Counts III and IV). The action was subsequently removed to this Court.

Defendant moves to dismiss the First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint is granted/denied.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202,

1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For the purposes of this Motion to Dismiss, the following allegations are taken as true.

Plaintiffs are residents of Illinois. Defendant is a fraternal life insurance society based in Adrian, Michigan. Defendant sells life insurance policies and individual tax-deferred and tax-sheltered guaranteed annuities through its special representatives, managers and other agents and employees in nine states, including Illinois.

In late 1990, Plaintiffs developed a potential product for Defendant, the Liquidity Plus Annuity. Plaintiffs offered Defendant the Liquidity Plus Annuity; and it accepted the annuity program, which was adopted as one of Defendant's products.

Plaintiffs were then hired as Special Representatives and Managers by Defendant. In that capacity, Defendant paid Plaintiffs commissions for soliciting memberships, selling insurance and selling annuities. Defendant was to subsidize Plaintiffs' pension and health care benefits so long as they maintained a minimum level of sales. Plaintiffs received commissions on all sales of all the

annuities they sold, including the Liquidity Plus Annuity. Plaintiffs also received "overrides" and "trail income" on sales of the Liquidity Plus Annuity made by other Special Representatives and Managers. Plaintiffs were also to receive "overrides" and "trail income" on sales of the Liquidity Plus Annuity, and any other annuity they designed, made by other Special Representatives and Managers.

Before 1991, Defendant had active Special Representatives in Michigan, Indiana, and Ohio. Between 1991 and 1993, Plaintiffs recruited hundreds of new Special Representatives for Defendant in Illinois, Florida, Arizona, and Iowa.

In 1993, Plaintiffs designed a second-generation annuity to the Liquidity Plus annuity, the Liquidity 2000 Annuity. The Liquidity 2000 Annuity carried less total benefits for consumers than did the Liquidity Plus Annuity. Plaintiffs were to receive commissions on all new sales and renewals of the Liquidity 2000 Annuity in addition to "overrides" and "trail income" for sales and renewals made by other Special Representatives and Managers.

In 1995, Plaintiffs designed a third-generation annuity to the Liquidity Plus Annuity, the Retirement Edge Annuity. The Retirement Edge Annuity carried less total benefits for consumers than did the Liquidity Plus Annuity or the Liquidity 2000 Annuity. The commission structure with respect to the Retirement Edge Annuity was identical to their commission structure with the Liquidity Plus Annuity and the Liquidity 2000 Annuity.

In 1996, Defendant began offering incentives to Special Representatives and Managers to roll Liquidity Plus Annuities and Liquidity 2000 Annuities into Retirement Edge Annuities rather than offering renewals of the Liquidity Plus and Liquidity 2000 Annuities. The rollover resulted in decreased benefits for recipients of the Liquidity Plus Annuity and the Liquidity 2000 Annuity and

decreased commissions for Plaintiffs. Plaintiffs did not know or approve of these incentives.

In 1999, Plaintiffs submitted to Defendant a fourth-generation to the Liquidity Plus Annuity. This proposed annuity provided less overall benefits than the Liquidity Plus Annuity, the Liquidity 2000 Annuity, and the Retirement Edge Annuity. Defendant informed Plaintiffs that it would review the proposed annuity and contact Plaintiffs about it within a week. Defendant did not contact Plaintiffs about the proposed annuity and instead distributed the proposed annuity directly to its Special Representatives for sale, thereby eliminating Plaintiffs' eligibility for "overrides" or "trailer income" on sales of the proposed annuity.

Defendant also implemented a policy of rolling over earlier annuities into later generation annuities. Under this policy, it instructed its Special Representatives to issue the proposed annuity to consumers of the Liquidity Plus Annuity, the Liquidity 2000 Annuity, and the Retirement Edge Annuity, rather than renewing the existing annuities. Through this policy, Defendant avoided paying Plaintiffs any commissions on renewals of the old policies as well as on the issuance of the proposed annuity.

## DISCUSSION

Defendant argues that Plaintiffs' claim for intentional misrepresentation (Counts I and II) should be dismissed because Plaintiffs' reliance was patently unreasonable and that such claims have been waived. Defendant further argues that Counts I and II should be dismissed because (1) they do not state claims for promissory fraud since Plaintiffs have not alleged that the alleged promise was particularly egregious or embedded in a larger pattern of deception as required and (2) they do not comply with the pleading requirements of Federal Rule of Civil Procedure 9(b).

To state a claim for intentional misrepresentation, Plaintiffs must allege:

> (1) a statement of material *past or present fact*; (2) that the statement was false; (3) that the party making the statement knew or believed it to be false; (4) that the party to whom the statement was made believed and relied on the statement and had a right to do so; (5) that the statement was made for the purpose of inducing the other party to act or refrain from acting; and (6) that the reliance of the person to whom the statement was made led to his injury.

*Modern Track Mach., Inc. v. Bry-Lon, Ltd.*, 197 Ill. App. 3d 560, 564 (1990) (emphasis added).

Counts I and II allege that Defendant told Plaintiffs that it would review the proposed annuity and inform them at a later date whether it would adopt the proposed annuity as a product. (Am. Compl. ¶¶ 23, 28.) This is not a statement of material past or present fact but rather a promise. "A 'statement . . . which relates to future or contingent events, expectations or probabilities . . . ordinarily does not constitute an actionable misrepresentation.'" *Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997) (quoting *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (citations omitted)). Therefore, Counts I and II do not state claims for intentional misrepresentation.

Plaintiffs appear to be attempting to state claims for promissory fraud. Promissory fraud is actionable if "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 334 (1977); *see also Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992). This exception applies when "'a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment.'" *Bower*, 978 F.2d at 1011 (quoting *Concord Indus., Inc. v. Harvel Indus. Corp.*, 122 Ill. App. 3d 845, 849-850 (1984). To survive a motion to dismiss, a plaintiff "'must be able to point to specific, objective manifestations of fraudulent intent – a scheme or device,'" *Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corp. v.*

*Holly Sys., Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985)), and "must allege that the defendant intended to induce plaintiff to act for defendant's benefit in reliance on the misrepresentation." *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 881 (N.D. Ill. 1999). Mere assertions that the defendant had no intention of keeping its promise are insufficient to state a claim for promissory fraud. *Bensdorf & Johnson*, 58 F. Supp. 2d at 881. However, the court may infer fraudulent intent where the breach of promise occurs so close to the promise that the only possible inference is that the promisor never intended to keep the promise. *Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995-96 (N.D. Ill. 2001).

Counts I and II do not adequately state a claim for promissory fraud. Counts I and II allege that (1) Defendant told Plaintiffs it would review the proposed annuity and would tell them at a later date whether it would adopt the proposed annuity as a product; (2) Defendant did not contact Plaintiffs; (3) Defendant knew at the time it made that statement that it would not contact Plaintiffs because it implemented the proposed annuity without informing Plaintiffs; (4) Plaintiffs detrimentally relied on these statements by not offering the proposed annuity to other insurers or seeking commissions, "overrides", or "trail income" on sales and renewals of the proposed annuity; and (5) Plaintiffs sustained damages in the amount of lost commissions, "overrides", and "trail income" on the proposed annuity. (Am. Compl. ¶¶ 23, 24, 25, 26, 28, 29, 30, 31.)

Counts I and II do not allege when Defendant began selling the proposed annuity. Although in reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff, *see Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000), the allegations of Counts I and II do not reasonably support the inference that Defendant's promise and the breach of that

promise, implementing the sale of the proposed annuity, were close in time. Counts I and II do not allege any fraudulent intent on the part of Defendant. The allegations also do not reasonably support the inference that Defendant never intended to keep its promise and intended to induce Plaintiffs to rely on its promise. Counts I and II do not contain any allegations from which it could be reasonably inferred that Defendant took any steps to induce Plaintiffs not to shop the proposed annuity to other insurers. Rather, Counts I and II baldly assert that Defendant never intended to keep its promise. This is insufficient. *Bensdorf & Johnson*, 58 F. Supp. 2d at 881.

Moreover, Counts I and II fail to comply with the requirements of Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Fed.R.Civ.P. 9(b). This means that persons alleging fraud must state "'the who, what, when, where, and how.'" *Boyd Mach. & Repair Co. v. American Int'l Homes, Ltd.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990)). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997) (citations omitted). In this case, Plaintiffs must identify "'the persons making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *DeLeon*, 55 F. Supp. 2d at 825 (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). Counts I and II do not allege which employee of Defendant made the alleged misrepresentation, if it was made orally or in writing to Plaintiffs or other persons, or where or when it was made. Thus, Counts I and II do not comply with Rule 9(b).

Additionally, under Illinois law, Plaintiffs must be justified in relying on Defendant's

statement. *Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1056 (7th Cir. 1988). Defendant allegedly stated that it would contact Plaintiffs within a week. Plaintiffs do not plead, upon the passage of the one-week deadline, that they followed up with Defendant on the idea or that Defendant asked them to forego shopping the annuity to other insurers. Plaintiffs have not pled any actions in reliance on Defendant's statement, i.e. that they lost any opportunity to market their plan to anyone other than Defendant during that week. Therefore, Counts I and II are dismissed.

Defendant argues that Counts III and IV should be dismissed because Defendant is not Plaintiffs' fiduciary.

Counts III and IV request an accounting. To maintain an action for an accounting, a plaintiff must allege that he has no adequate remedy at law and "(1) a breach of a fiduciary relationship between the parties[,] (2) a need for discovery[,] (3) fraud[,] or (4) the existence of mutual accounts which are of a complex nature." *People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 501 (1986). A plaintiff may maintain an action for an accounting even though he has an adequate remedy at law if the accounting sought is based on breach of a fiduciary duty. *Hartigan*, 149 Ill. App. 3d at 501. Under this exception, a plaintiff need not plead the inadequacy of legal remedies. *Hartigan*, 149 Ill. App. 3d at 501. "To maintain an equitable accounting action on a cause of action cognizable at law, the plaintiff must meet a high standard of showing that the accounts between the parties are so complicated that they necessitate a court in equity to unravel them to determine damages." *Enterprise Warehousing Solutions, Inc. v. Capital One Servs., Inc.*, No. 01 C 7725, 2002 WL 406976 (N.D. Ill. Mar. 15, 2002). Courts have broad discretion to determine whether an equitable accounting is warranted. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985)

Under Illinois law, a fiduciary relationship may arise as a matter of law due to a particular relationship between the parties or "as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Prime Leasing, Inc. v. Kendig*, No. 1-00-2684, 2002 WL 1401911, at *9 (Ill. App. Ct. June 28, 2002). The proponent of the existence of such a relationship must establish it by clear and convincing evidence. *Kendig*, 2002 WL 1401911, at *9.

Counts III and IV allege that, as set forth earlier in the Amended Complaint and "by virtue of the relationship between [Plaintiffs] and [Defendant], [Defendant] had a fiduciary duty to [Plaintiffs]." (Am. Compl. ¶¶ 32, 37.) Counts III and IV also allege that "[a]s set forth above, [Defendant] committed a fraud against [Plaintiffs]"; and, therefore, Plaintiffs are entitled to an accounting. (Am. Compl. ¶¶ 34, 35, 38, 39.)

Counts III and IV adequately state claims for an accounting. The focus of whether Counts III and IV fail to state an accounting claim under Illinois law is on "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). While Counts III and IV do not allege that Plaintiffs lack an adequate remedy at law, it is clear that an accounting is necessary due to the need for discovery and the complicated nature of the accounts between the parties. Defendant managed, operated, controlled, collected and distributed the funds that were received for the sale of the various annuities and for which Plaintiffs allege that they are owed commissions. All of the pertinent records are, presumably, in the custody and control of Defendant. Discovery is necessary to unravel these accounts and determine any alleged damages. Moreover, the fact that Plaintiffs seek legal remedies elsewhere in the Amended Complaint does not preclude them from seeking an accounting in Counts

III and IV. Under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a party may plead inconsistent alternative claims for relief. Therefore, Defendant's Motion to Dismiss is denied with respect to Counts III and IV.

Defendant argues that Counts V and VI should be dismissed for failure to state a claim for interference with prospective economic advantage because the Amended Complaint does not allege Defendant interfered with Plaintiffs' economic relationship with a third party.

Counts V and VI are claims for tortious interference with prospective economic advantage.

> In order to state a claim for tortious interference with prospective economic advantage plaintiff must allege that 1) it had a reasonable expectation of entering into a valid business relationship[,] 2) the defendant had knowledge of the plaintiff's expectancy[,] 3) the defendant's purposeful interference prevented plaintiff's legitimate expectation from ripening into a valid business relationship[,] and 4) the plaintiff was damaged as a result of the interference.

*3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 937 (N.D. Ill. 2000). Under Illinois law, the plaintiff must allege an action by the interfering party that is directed towards a specific third party with whom the plaintiff expects to do business. *Bagley v. Lumbermens Mut. Cas. Co.*, 100 F. Supp. 2d 879, 884 (N.D. Ill. 2000).

Counts V and VI allege that (1) Plaintiffs had a reasonable expectation of continued commissions on renewals of the Liquidity Plus Annuity, Liquidity 2000 Annuity, and the Retirement Edge Annuity; (2) Defendant was aware of this expectation; (3) Defendant created incentives for other Special Representatives to sell the Retirement Edge Annuity instead of the Liquidity Plus Annuity and the Liquidity 2000 Annuity; (4) Defendant created incentives for other Special Representatives to sell the proposed annuity to holders of the Retirement Edge Annuity; and (5) as a result, Plaintiffs were improperly denied commissions on renewals of the Liquidity Plus Annuity,

Liquidity 2000 Annuity, and the Retirement Edge Annuity. (Am. Compl. ¶¶ 41-46, 48-53.)

Counts V and VI adequately state claims for tortious interference with prospective economic advantage. The allegations identify third parties with whom Plaintiffs expected to do business, the purchasers of the old annuities who were induced to purchase the proposed annuity. Counts V and VI allege that Defendant knew Plaintiffs expected to gain commissions on sales and renewals of the old annuities and, through the other Special Representatives, interfered with this relationship by selling the proposed annuity instead of the old annuities. Such allegations are sufficient to state a claim for tortious interference with prospective economic advantage. Therefore, Defendant's Motion to Dismiss is denied with respect to Counts V and VI.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint is granted with respect to Counts I and II and denied with respect to all other counts.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: August 29, 2001