**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL J. BRDECKA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 3076 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| **GLEANER LIFE INSURANCE SOCIETY,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Michael J. Brdecka ("Brdecka"), filed an action against Gleaner Life Insurance Society ("Gleaner") for intentional misrepresentation, interference with prospective economic advantage and an accounting. The intentional misrepresentation claims were dismissed in 2002. Gleaner now moves for summary judgment. For the following reasons, Gleaner's motion for summary judgment is granted.

**Background**[1]

Gleaner is a tax-exempt fraternal benefits society. Gleaner offers life insurance and tax-deferred annuities to members and prospective members through a network of independent special representatives. Gleaner refers to purchasers of its deferred annuities as "members" due to the legal relationship between a fraternal benefits society and an

---

[1] Unless otherwise noted, the facts in this section are uncontested and come from the parties' Rule 56.1 statement of facts or exhibits in support thereof. We note that none of the facts alleged in the background section of Brdecka's response brief are supported by exhibits. Accordingly, we will not consider those unsupported facts. *See Mingo v. Roadway Express, Inc.,* 135 F. Supp. 2d 884, 893-94 (N.D. Ill. 2001); *Bell Enters. Venture v. Santanna Natural Gas Corp.,* 2002 U.S. Dist. LEXIS 19460, *5 (N.D. Ill. 2002) (recognizing that the Court must disregard factual contentions in the Rule 56.1 statement of facts or response which are conclusory or unsupported by the record or admissible evidence).

insured individual.

The special representatives who sell annuities and other products to Gleaner members act as agents for Gleaner. They are not party to the annuity agreement between Gleaner and the member. When a special representative sells a Gleaner product such as an annuity, Gleaner pays a commission directly to that special representative. Gleaner enters into a Special Representative Agreement with each of its special representatives. Under the terms of the Special Representative Agreement, Gleaner or the special representative can terminate the agreement, with or without cause, with ten days written notice.

In addition to special representatives, Gleaner also has a network of managers or general agents who are given the right to establish their own agency and receive commissions on sales made by special representatives under their direction. Gleaner enters into a Manager's Agreement with each of its managers or general agents.

On May 24,1991 Brdecka, entered into a Special Representative Agreement and a Manager's Agreement with Gleaner. Pursuant to the Special Representative Agreement, Gleaner paid compensation in the form of commissions directly to Brdecka for sales he made of Gleaner products. In conjunction with the Manager's Agreement, Brdecka recruited special representatives for Gleaner who Gleaner then authorized to sell its products. Brdecka received override payments and trail income[2] from Gleaner on sales made by the special representatives in his agency pursuant to the Manager's Agreement.

---

[2] The terms "override payments" and "trail income" are repeatedly used throughout the parties' briefs but are not defined. It appears that these terms refer to a form of payment or commission.

For example, if the total commission on a Gleaner product was 8.5%, 7% would be paid by Gleaner to the special representative who sold the Gleaner product and 1.5% would be paid by Gleaner to Brdecka in the form of an override payment. Brdecka was not entitled to receive commissions, renewals, overrides or trail income for sales made by Gleaner special representatives other than those within his agency.

When Brdecka created his agency, among the special representatives he introduced to Gleaner was Norm Chiodras ("Chiodras"). Chiodras entered into a Special Representative Agreement with Gleaner. As with the other special representatives in Brdecka's agency, Brdecka did not have a written or oral contract directly with Chiodras, nor did Brdecka enter into a written or oral non-compete agreement with Chiodras. Additionally, no written agreement existed between Brdecka and Gleaner prohibiting Gleaner from promoting the special representatives in Brdecka's agency.[3]

From the beginning of his relationship with Gleaner, Chiodras was one of the top sellers among all of Gleaner's special representatives. On sales that Chiodras made between 1991 through October of 1999, Gleaner paid commissions directly to Chiodras and an override commission on such sales directly to Brdecka. In 1999, Gleaner promoted Chiodras and gave him his own agency, similar to that of Brdecka's, to reward Chiodras' performance and to insure his continued success and satisfaction with Gleaner. As a result

---

[3] Brdecka denies that there was no oral contract between plaintiff and Gleaner that Gleaner would not or could not promote special representatives in his agency. Brdecka contends that he had an oral conversation with Joe Burnett and Frank Dick about this issue. However, the deposition testimony Brdecka relies on does not support the existence of a contract prohibiting Gleaner from promoting special representatives in Brdecka's agency. Indeed, Brdecka admitted that there was no written contract prohibiting Gleaner from promoting special representatives in Brdecka's agency. Furthermore, Brdecka admitted that neither Mr. Burnett nor Mr. Dick told him that the special representative in his agency would always be considered part of his group as long as they worked for Gleaner.

of Chiodras' promotion, Brdecka no longer received the override commissions or trail income on Chiodras' sales.

Gleaner members have no obligation to purchase Gleaner products from Brdecka or the special representatives in his agency. The members are free to purchase Gleaner products from any Gleaner special representative. Further, Gleaner members have the right to choose which Gleaner products to purchase. The members also have a right to rollover their Gleaner products into other Gleaner products or into products of other companies.

In this action, Brdecka contends that: (1) Gleaner interfered with Brdecka's prospective business advantage of ongoing relationships with Gleaner members and (2) Gleaner interfered with his prospective business advantage of an ongoing relationship with Chiodras.

**Legal Analysis**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. "A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Alexander v. Dept. of Health and Family Services*, 263 F.3d 673, 680 (7th Cir. 2001). When making this determination, we review the record in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor. *Id.*

However, once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). Federal Rule of Civil Procedure 56(c) "mandates summary judgment when the nonmoving party fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial." *Jefferson v. City of Chicago*, 2000 U.S. Dist. LEXIS 22081, *10 (N.D. Ill. 2000).

The Local Rules for the Northern District of Illinois impose on a party contesting summary judgment an exacting obligation to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994). Brdecka properly responded to Gleaner's statement of facts by admitting the truth of each fact or controverting the facts with support from the record. However, Brdecka failed to submit his own statement of facts in accordance with Local Rule 56.1(b)(3). Brdecka's response to Gleaner's motion for summary judgment includes a background section which realleges the allegations in his amended complaint. These facts are not supported by references to affidavits, parts of the record or other supporting materials and therefore, they do not comply with Rule 56.1(b)(3).

This Court has the discretion to admit improperly controverted facts and to ignore statements of fact that are not properly supported. *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994). The facts in the background section of Brdecka's response brief are completely unsupported and therefore, we will not consider them. *See Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) (recognizing that "the district court is entitled to limit its analysis of the facts on summary judgment to

5

evidence that is properly identified and supported in the parties' statements.").

I.  **Tortious Interference with Prospective Economic Advantage**

In Count V of the amended complaint, Brdecka alleges that Gleaner interfered with his prospective economic advantage. Under Illinois law, "[t]o avoid summary judgment on his tortious interference claim, [Brdecka] must provide evidence from which a jury reasonably could find that he had a reasonable expectation of entering into or continuing a valid business relationship, that the defendants knew of his expectation, that they intentionally interfered with his expectation, and that he was damaged as a result of the interference." *Croft v. Inlight Risk Management, Inc., et al.*, 2002 U.S. Dist. LEXIS 16998, *19-20 (N.D. Ill. 2002) (*citing Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 994, 639 N.E.2d 144, 147 (1st Dist. 1993)). Furthermore, Brdecka must show that the defendant's interference is directed to a third party. *Schuler*, 265 Ill. App. 3d at 994, 639 N.E.2d at 147.

Gleaner argues that it is entitled to summary judgment because there is no third party with whom Brdecka had a prospective business relationship. Gleaner claims that it had independent contractual relationships with the all the parties involved and therefore, it could not have interfered with Brdecka's prospective economic advantage. In particular, Gleaner argues that because it was the only party to pay Brdecka, it could not interfere with its own relationship with him. Generally, a party cannot tortiously interfere with its own business relationship. *Emery v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 2003 U.S. Dist. LEXIS 16403, *33 (N. D. Ill. 2003) (*citing Quist v. Bd. of Trs. of Cmty. Coll. Dist. No. 525*, 258 Ill. App. 3d 814, 629 N.E.2d 807, 811-12 (3rd Dist.1994)). However, Brdecka argues that Gleaner tortiously interfered with Brdecka's ongoing business relationships with the Gleaner members.

### A. Brdecka's Relationships with the Gleaner Members

Brdecka contends that the Gleaner members are necessary third parties for purposes of his tortious interference claim. Specifically, Brdecka argues that he had a reasonable expectation of continued commissions on renewals of the Liquidity Plus Annuity, Liquidity 2000 Annuity and the Retirement Edge Annuity ("the old annuities"). Gleaner purportedly interfered with Brdecka's relationships with the Gleaner members by promoting the sale of a new annuity rather than issuing Gleaner members renewals of the old annuities.[4] However, Brdecka submitted no evidence in support of his claim that Gleaner promoted the sale of the new annuity. Indeed, all of the facts detailing Brdecka's development of the old annuities, his entitlement to commissions on those annuities and his claim that Gleaner directed its special representative to issue the new annuity rather than renewals of the old annuities come from the background section of Brdecka's response brief. As set forth above, none of these facts are supported by references to affidavits, parts of the record or other supporting materials and therefore, we will not consider them. *See Bell,* 2002 U.S. Dist. LEXIS 19460 at *5.

Simply put, Brdecka has failed to come forward with any evidence that Gleaner directed any tortious conduct towards the Gleaner members. Accordingly, Brdecka's claim that Gleaner tortiously interfered with his relationships with the Gleaner members fails as a matter of law. *See Fields v. Feldmann Eng'g & Mfg. Co.*, 1994 U.S. Dist. LEXIS 11396, *42 (N.D. Ill. 1994) (recognizing that a claim for tortious interference with prospective

---

[4] Apparently, while Brdecka would have received commissions if members renewed their existing annuities, he was not entitled to commissions on the new annuity. Therefore, according to Brdecka, Gleaner's alleged promotion of the sale of the new annuity deprived him of commissions he expected to receive on the renewals.

economic advantage requires action toward a third party); *see also, Allen Saltzman Associates, Inc. v. Aileen, Inc.*, 633 F. Supp. 1161, 1163 (N.D. Ill. 1986) (finding that defendant was entitled to judgment as a matter of law on plaintiff's claim for tortious interference with business relations because there was no evidence that the defendant directed any tortious conduct towards plaintiff's customers).

### B. Brdecka's Relationship with Chiodras

Brdecka also contends that Gleaner interfered with his ongoing relationship with Chiodras. According to Brdecka, Gleaner interfered with his prospective economic advantage by promoting Chiodras in order to cease paying Brdecka the override commissions and trail income on Chiodras' sales.

Assuming that Chiodras is an appropriate third party for Brdecka's tortious interference claim, in order to survive summary judgment, Brdecka still must come forward with specific evidence from which a jury could find that he had a reasonable expectation of continuing a valid business relationship with Chiodras. *Croft*, 2002 U.S. Dist. LEXIS 16998 at *19-20. In Illinois, "a reasonable expectation of a business relationship is more than a 'mere hope' of developing or continuing a relationship." *Cooper v. Durham School Services*, 2003 U.S. Dist. LEXIS 25005, *26-27 (N.D. Ill. 2003) (*citing Williams v. Weaver*, 145 Ill. App. 3d 562, 495 N.E.2d 1147, 1152 (1st Dist. 1986)).

Here, the evidence shows that Gleaner entered into a Special Representative Agreement with Chiodras. However, that Special Representative Agreement could be terminated, with or without cause, by either Gleaner or Chiodras with ten days written notice. Further, Brdecka admitted that he did not enter into a non-compete agreement with Chiodras nor did Brdecka have a written or oral contract with Chiodras. Additionally, there

was no written or oral agreement between Brdecka and Gleaner prohibiting Gleaner from promoting Chiodras or any of the other special representatives in Brdecka's agency.

The evidence submitted by Gleaner demonstrates that Brdecka did not have a reasonable expectation of continuing a valid business relationship with Chiodras. Indeed, at any time, Chiodras could have ended his ongoing business relationship with Brdecka by leaving his agency to work for someone else. There was no contract or non-compete agreement to prevent such an action. Further, the relationship between Brdecka and any of his special representatives, including Chiodras, could have ended by virtue of a promotion. This is exactly what happened when Gleaner promoted Chiodras. There was no contract prohibiting Gleaner from promoting Chiodras or any other special representative in Brdecka's agency. Additionally, Gleaner and Chiodras both had the right to terminate the Special Representative Agreement without cause. Such a termination would have ended the existing business relationship between Brdecka and Chiodras because Chiodras would no longer be authorized to sell Gleaner products.

Brdecka has failed to come forward with specific evidence which demonstrates that the existence of a genuine issue of material fact with respect to whether he had a reasonable expectation of continuing a valid business relationship with Chiodras. We are not obliged to scour the record for factual disputes. *Flaherty*, 31 F.3d at 453. Based on the foregoing, we find that Brdecka did not have a reasonable expectation of continuing a valid business relationship with Chiodras or any of the other special representatives in his agency for that matter. Therefore, Brdecka's claim that Gleaner tortiously interfered with

his ongoing business relationships with Chiodras fails as a matter of law.[5]

Because Brdecka has failed to come forward with any evidence to establish: (1) that Gleaner directed any tortious conduct towards the Gleaner members, or (2) that he had a reasonable expectation of continuing a valid business relationship with Chiodras, Gleaner's motion for summary judgment on Brdecka's claim for tortious interference with prospective economic advantage is granted.

## II.     Accounting

Brdecka also requests an accounting. To prove a claim for an accounting in Illinois, a plaintiff must establish the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature. *Kinesoft Dev. Corp. v. Softbank Holdings, Inc.*, 2000 U.S. Dist. LEXIS 18919, *20 (N.D. Ill. 2000); *3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000) (*citing Mann v. Kemper Financial Companies, Inc.*, 247 Ill. App. 3d 966, 618 N.E.2d 317, 327 (1st Dist. 1992)). While the lack of an adequate legal remedy is the essential prerequisite to an accounting claim, Illinois courts will excuse a plaintiff's failure to establish the absence of an adequate remedy at law if the accounting claim is based on a breach of fiduciary duty. *3Com Corp.*, 104 F. Supp. 2d at 941.

---

[5] Because Brdecka's tortious interference claim fails as a matter of law, we need not address Gleaner's argument that it is entitled to a competitive privilege.

Brdecka argues that he is entitled to an accounting from Gleaner because a fiduciary relationship existed between the parties. Gleaner contends that we should enter summary judgment on the accounting claim because Brdecka failed to demonstrate the existence of a fiduciary relationship. However, even if Brdecka established the existence a fiduciary relationship between the parties, his accounting claim still fails.

To prove his accounting claim, Brdecka must also establish a breach of the alleged fiduciary relationship. *Kinesoft*, 2000 U.S. Dist. LEXIS 18919 at *20. Here, Brdecka has not come forward with a single piece of evidence to demonstrate that Gleaner breached any fiduciary duty it may have owed him. In the complaint, Brdecka alleged that Gleaner committed a fraud against him. However, the intentional misrepresentation claims were dismissed in 2002 and Brdecka has not offered any additional evidence to establish a breach of the alleged fiduciary relationship. Accordingly, because Brdecka failed to establish the existence of an element essential to his accounting claim, Gleaner's motion for summary judgment on the accounting claim is granted.

**Conclusion**

For the reasons set forth above, Gleaner's motion for summary judgment is granted. It is so ordered.

ENTER:

_____

**MICHAEL T. MASON**
**United Stated Magistrate Judge**

**Dated: June 6, 2005**